Benjamin Heikali (SBN 307466)
**FARUQI & FARUQI, LLP**
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
Facsimile: (424) 256-2885
E-mail: bheikali@faruqilaw.com

[Additional Counsel on Signature Page]

*Attorney for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

DAVID ZIMMER, Individually and on
Behalf of All Others Similarly Situated,

          Plaintiff,

      v.

VARIAN MEDICAL SYSTEMS, INC., R.
ANDREW ECKERT, DOW R. WILSON,
DAVID J. ILLINGWORTH, JEAN-LUC
BUTEL, ANAT ASHKENAZI, REGINA E.
DUGAN, JUDY BRUNER, JEFFREY R.
BALSER, PHIL FEBBO and MICHELLE
LE BEAU,

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 3:20-cv-06266

**CLASS ACTION COMPLAINT FOR
VIOLATIONS OF SECTIONS 14(a) AND
20(a) OF THE SECURITIES
EXCHANGE ACT OF 1934**

**JURY TRIAL DEMANDED**

---

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

Plaintiff David Zimmer ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.      This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of Varian Medical Systems, Inc. ("Varian" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and, together with Varian, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. § 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger (the "Proposed Transaction") between Varian and Siemens Healthineers AG ("Siemens").

2.      On August 2, 2020, the Board caused the Company to enter into an agreement and plan of merger ("Merger Agreement"), pursuant to which the Company's shareholders stand to receive $177.50 in cash for each share of Varian common stock they own (the "Merger Consideration").

3.      On August 28, 2020, in order to convince Varian shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and misleading Form PREM14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act. The materially incomplete and misleading Proxy violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. § 240.14a-9), each of which constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Transaction, thereby

- 1 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the summary of certain valuation analyses conducted by Varian's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its opinion that the Merger Consideration is fair to shareholders, on which the Board relied.

6.      It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the forthcoming vote to allow the Company's shareholders to make an informed decision regarding the Proposed Transaction.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of: (i) Regulation G (17 C.F.R. § 244.100); and (ii) Rule 14a-9 (17 C.F.R. § 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Transaction and taking any steps to consummate the Proposed Transaction unless, and until, the material information discussed below is disclosed to Varian shareholders sufficiently in advance of the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

9.      Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

- 2 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Varian maintains its principal executive offices in this District.

### **PARTIES**

11. Plaintiff is, and at all relevant times has been, a holder of Varian common stock.

12. Defendant Varian is incorporated in Delaware and maintains its principal executive offices at 3100 Hansen Way, Palo Alto, California 94304. The Company's common stock trades on the New York Stock Exchange under the ticker symbol "VAR."

13. Individual Defendant R. Andrew Eckert is Varian's Chairman and has been a director of Varian at all relevant times.

14. Individual Defendant Dow R. Wilson is Varian's President and Chief Executive Officer and has been a director of Varian at all relevant times.

15. Individual Defendant David J. Illingworth has been a director of Varian at all relevant times.

16. Individual Defendant Jean-Luc Butel has been a director of Varian at all relevant times.

17. Individual Defendant Anat Ashkenazi has been a director of Varian at all relevant times.

18. Individual Defendant Regina E. Dugan has been a director of Varian at all relevant times.

19. Individual Defendant Judy Bruner has been a director of Varian at all relevant times.

20. Individual Defendant Jeffrey R. Balser has been a director of Varian at all relevant times.

21. Individual Defendant Phil Febbo has been a director of Varian at all relevant times.

22. Individual Defendant Michelle Le Beau has been a director of Varian at all relevant

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

times.

23.     The Individual Defendants referred to in paragraphs 13-22 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Varian (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

25.     This action is properly maintainable as a class action because:

a.     The Class is so numerous that joinder of all members is impracticable.  As of August 28, 2020, there were approximately 92,000,000 shares of Varian common stock outstanding, held by hundreds of individuals and entities scattered throughout the country. The actual number of public shareholders of Varian will be ascertained through discovery;

b.     There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)     whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)     whether Defendants have misrepresented or omitted material information concerning the Proposed Transaction in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)     whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

- 4 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

iv)  whether Plaintiff and other members of the Class will suffer irreparable harm if compelled to vote their shares regarding the Proposed Transaction based on the materially incomplete and misleading Proxy.

c.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class;

d.  Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class;

e.  The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for the party opposing the Class;

f.  Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole; and

g.  A class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

**I.    The Proposed Transaction**

26.  Varian is a leading manufacturer of medical devices and software for treating cancer and other medical conditions with radiotherapy, stereotactic radiosurgery, stereotactic body radiotherapy, brachytherapy and proton therapy.

27.  On August 2, 2020, Varian and Siemens issued a joint press release announcing the Proposed Transaction, which states in pertinent part:

PALO ALTO, Calif., Aug. 2, 2020 /PRNewswire/ -- Varian (NYSE: VAR) today

- 5 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

announced that it has entered into a definitive agreement to combine with Siemens Healthineers AG (Frankfurt: SHL) in an all-cash transaction valued at $16.4 billion on a fully diluted basis. Under the terms of the agreement, which has been unanimously approved by Varian's Board of Directors, Siemens Healthineers will acquire all outstanding shares of Varian for $177.50 per share in cash, representing a premium of approximately 42% to the 30-day volume weighted average closing price of Varian's common stock as of July 31, 2020, the last trading day prior to the announcement of the transaction, and a premium of approximately 24% to the closing price of Varian's common stock on July 31, 2020.

The combination will create a multi-disciplinary global healthcare leader with the most comprehensive cancer care portfolio in the industry. The combined company will offer an integrated platform of end-to-end oncology solutions to address the entire continuum of cancer care, from screening and diagnosis to care delivery and post-treatment survivorship. By bringing together the highly complementary diagnostic tools, imaging, radiotherapy and AI capabilities across both companies, Varian and Siemens Healthineers will lead the digital transformation of oncology healthcare, enabling more efficient diagnosis, increased treatment quality and access, personalized precision cancer care, and improved outcomes for millions of patients worldwide.

"Today's announcement represents an important milestone in our company's history, and our Board is confident that this is the right path forward for Varian," said Dow Wilson, President and Chief Executive Officer of Varian. "In addition to delivering immediate and compelling value to our shareholders, the combination with Siemens Healthineers brings us even closer to realizing our transformative vision of a world without fear of cancer. Siemens Healthineers' innovative leadership in detection and diagnosis will extend our ability to serve clinicians and patients from the very first stage in the fight against cancer. And, we will be positioned to transform care for a greater number of patients worldwide."

Wilson continued, "Varian's innovative and patient-centric culture has enabled us to become an iconic leader in radiotherapy and multi-disciplinary cancer care, with a trusted global brand and strong customer loyalty. Siemens Healthineers values our talented and engaged employees and recognizes the strength of the Varian brand, our cutting-edge portfolio, and the relationships we've nurtured. We are thrilled to partner with them to extend our renowned customer care to reach more patients around the world. With Siemens Healthineers, we can accelerate our vision, meaningfully increase our patient care impact and broaden opportunities for our employees as part of a larger and more diversified organization."

Dr. Bernd Montag, CEO of Siemens Healthineers AG said, "With this combination of two leading companies we make two leaps in one step: A leap in the fight against cancer and a leap in our overall impact on healthcare. This decisive moment in the history of our companies means more hope and less uncertainty for patients, an even stronger partner for our customers, and for society more effective and efficient

- 6 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

medical care. Together with Varian's outstanding and passionate employees, we will shape the future of healthcare more than ever before."

The transaction is expected to close in the first half of calendar year 2021, subject to approval by Varian shareholders, receipt of regulatory approvals and other customary closing conditions.

Varian has established strong brand recognition, and expects to continue to operate under the Varian name as an independent company within Siemens Healthineers following the completion of the transaction.

Third Quarter Fiscal Year 2020 Financial Results

In a separate press release issued today, Varian announced financial results for its third quarter fiscal year 2020.

Advisors

Goldman Sachs & Co. LLC is serving as exclusive financial advisor to Varian and Wachtell, Lipton, Rosen & Katz is serving as legal counsel.

About Varian
At Varian, we envision a world without fear of cancer. For more than 70 years, we have developed, built and delivered innovative cancer care technologies and solutions for our clinical partners around the globe to help them treat millions of patients each year. With an Intelligent Cancer Care approach, we are harnessing advanced technologies like artificial intelligence, machine learning and data analytics to enhance cancer treatment and expand access to care. Our 10,000 employees across 70 locations keep the patient and our clinical partners at the center of our thinking as we power new victories in cancer care. Because, for cancer patients everywhere, their fight is our fight. For more information, visit http://www.varian.com and follow @VarianMedSys on Twitter.

28.    Varian is well-positioned for financial growth and the Merger Consideration fails to adequately compensate the Company's shareholders. It is imperative that Defendants disclose the material information they have omitted from the Proxy, discussed in detail below, so that the Company's shareholders can properly assess the fairness of the Merger Consideration for themselves and make an informed decision concerning whether or not to vote in favor of the Proposed Transaction.

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

29.     If the false and/or misleading Proxy is not remedied and the Proposed Transaction is consummated, Defendants will directly and proximately have caused damages and actual economic loss (i.e., the difference between the value to be received as a result of the Proposed Transaction and the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## II.     The Materially Incomplete and Misleading Proxy

30.     On August 28, 2020, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Transaction.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Transaction.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy misrepresents and/or omits material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

31.     A company's financial forecasts are material information a board relies on to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the Proxy discloses that in connection with the Proposed Transaction, Varian's management prepared "certain limited unaudited prospective financial information of Varian on a standalone basis, without giving effect to the merger . . . ." Proxy 52. These projections were provided to the Board and Goldman Sachs.  *Id.*

32.     When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.  In regard to financial information, companies are required to disclose "financial

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

33.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format."  17 C.F.R. § 229.10(b).  Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items."  17 C.F.R. § 229.10(b)(2).

34.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

(i) When management chooses to include its projections in a Commission filing, *the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.* In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. *The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.*

(ii) Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, *consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.* An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

35.     Here, Varian's shareholders would clearly find complete and non-misleading financial projections material in deciding how to vote, considering that the Board specifically

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

relied on the financial forecasts in reaching its decision to, among other things, approve the Merger Agreement and the transactions contemplated by it. Proxy 43-44.

36.    As discussed further below, the non-GAAP financial projections used do not provide Varian's shareholders with a materially complete understanding of the assumptions and key factors considered in developing the financial projections, which assumptions, factors and other inputs the Board reviewed.

### *The Financial Projections Relied on by the Board*

37.    The Proxy discloses that in connection with the Proposed Transaction, Varian's management prepared "certain limited unaudited prospective financial information of Varian on a standalone basis, without giving effect to the merger . . . ." *Id.* at 52.

38.    The Proxy goes on to disclose, *inter alia*, Varian's forecasted values for projected non-GAAP (Generally Accepted Accounting Principles) financial metrics for 2020 through 2030 for (1) Adjusted Operating Earnings (Non-GAAP), (2) Adjusted EBIT (Non-GAAP), (3) Net Income (Non-GAAP), (4) Adjusted EPS (Non-GAAP) and (5) Unlevered Free Cash Flow, but fails to provide (i) the line items used to calculate these non-GAAP metrics or (ii) a reconciliation of these non-GAAP projections to the most comparable GAAP measures. *Id.* at 53-54.

39.    The Proxy defines Adjusted Operating Earnings (Non-GAAP) as "operating earnings excluding amortization of intangible assets and amortization of inventory step-up, acquisition and integration-related expenses or benefits, impairment charges, restructuring charges, significant litigation charges or benefits and legal costs." *Id.* at 53 n.1. Nevertheless, the Proxy fails to reconcile Adjusted Operating Earnings (Non-GAAP) to its most comparable GAAP measure or disclose the line items used to calculate Adjusted Operating Earnings (Non-GAAP), rendering the Proxy materially false and/or misleading. *Id.* at 53.

40.    The Proxy defines Adjusted EBIT (Non-GAAP) as "Adjusted Operating Earnings as further adjusted to exclude amortization." *Id.* at 53 n.1. Nevertheless, the Proxy fails to reconcile Adjusted EBIT (Non-GAAP) to its most comparable GAAP measure or disclose the line

- 10 -

items used to calculate Adjusted EBIT (Non-GAAP), rendering the Proxy materially false and/or misleading. *Id.* at 53.

41.     The Proxy defines Net Income (Non-GAAP) as "GAAP net earnings adjusted to exclude the amortization of intangible assets and amortization of inventory step-up, acquisition and integration-related expenses or benefits, impairment charges, restructuring charges[,] significant litigation charges or benefits, legal costs, gains and losses on equity investments, and significant non-recurring tax expense or benefits." *Id.* at 53 n.2. Nevertheless, the Proxy fails to reconcile Net Income (Non-GAAP) to its most comparable GAAP measure or disclose the line items used to calculate Net Income (Non-GAAP), rendering the Proxy materially false and/or misleading. *Id.* at 53.

42.     The Proxy defines Adjusted EPS (Non-GAAP) as "GAAP net earnings per diluted share adjusted to exclude the amortization of intangible assets and amortization of inventory step-up, acquisition and integration-related expenses or benefits, impairment charges, restructuring charges, significant litigation charges or benefits, legal costs, gains and losses on equity investments, and significant non-recurring tax expense or benefits" *Id.* at 53 n.3. Nevertheless, the Proxy fails to reconcile Adjusted EPS (Non-GAAP) to its most comparable GAAP measure or disclose the line items used to calculate Adjusted EPS (Non-GAAP), rendering the Proxy materially false and/or misleading. *Id.* at 53.

43.     The Proxy defines Unlevered Free Cash Flow as "EBIT less taxes, plus depreciation and amortization, less capital expenditures and increase in net working capital." *Id.* at 54 n.2. Nevertheless, the Proxy fails to reconcile Unlevered Free Cash Flow to its most comparable GAAP measure or disclose the line items used to calculate Unlevered Free Cash Flow, rendering the Proxy materially false and/or misleading. *Id.* at 54.

44.     Thus, the Proxy's disclosure of these non-GAAP financial forecasts provides an incomplete and materially misleading understanding of the Company's future financial prospects and the inputs and assumptions for which those prospects are based upon. It is clear that those

- 11 -
**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

inputs and assumptions were in fact forecasted and utilized in calculating the non-GAAP measures

disclosed and relied on by the Board to recommend the Proposed Transaction in violation of

Section 14(a) of the Exchange Act.

45.    The non-GAAP financial projections disclosed on pages 53-54 of the Proxy violate

Section 14(a) of the Exchange Act because: (i) the use of such forecasted non-GAAP financial

measures alone violates SEC Regulation G as a result of Defendants' failure to reconcile those

non-GAAP measures to their closest GAAP equivalent or otherwise disclose the specific financial

assumptions and inputs used to calculate the non-GAAP measures; and (ii) they violate SEC

Regulation 14a-9 because they are materially misleading as without any correlation with their

GAAP equivalent financial metrics, shareholders are unable to discern the veracity of the financial

projections.

46.    As such, this information must be disclosed in order to cure the materially

misleading disclosures regarding both the financial projections developed by the Company as well

as the projections relied upon by the Company's financial advisors.

### *The Financial Projections Violate Regulation G*

47.    The SEC has acknowledged that potential "misleading inferences" are exacerbated

when the disclosed information contains non-GAAP financial measures[1] and adopted Regulation

G[2] "to ensure that investors and others are not misled by the use of non-GAAP financial

measures."[3]

48.    Defendants must comply with Regulation G.  More specifically, the company must

disclose the most directly comparable GAAP financial measure <u>and</u> a reconciliation (by schedule

or other clearly understandable method) of the differences between the non-GAAP financial

---

[1]    Non-GAAP financial measures are numerical measures of future financial performance
that exclude amounts or are adjusted to effectively exclude amounts that are included in the most
directly comparable GAAP measure.  17 C.F.R. § 244.101(a)(1).
[2]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of
Regulation G.
[3]    SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (Jan. 22, 2003),
*available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule*").

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF
THE SECURITIES EXCHANGE ACT OF 1934**

measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100. This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[4]

49.    Moreover, the SEC has publicly stated that the use of non-GAAP financial measures can be misleading.[5]    Former SEC Chairwoman Mary Jo White has stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Varian included in the Proxy here) implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[6]

---

[4]    SEC, *Final Rule.*
[5]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance (June 24, 2016), *available at*   https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, *available at* http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.
[6]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), *available at* https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

- 13 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

50.     The SEC has required compliance with Regulation G, including reconciliation requirements in other merger transactions.  *Compare Youku Tudou Inc., et al.*, Correspondence to SEC 5 (Jan. 11, 2016) (Issuer arguing that Rule 100(d) of Regulation G does not apply to non-GAAP financials relating to a business combination),[7] *with Youku Tudou Inc., et al.*, SEC Staff Comment Letter 1 (Jan. 20, 2016) ("[The SEC] note[s] that your disclosure of projected financial information is not in response to the requirements of, or pursuant to, Item 1015 of Regulation M-A and is thus not excepted from Rule 100 of Regulation G.");[8] *see Harbin Electric, Inc.*, Correspondence to SEC 29 (Aug. 12, 2011) ("Pursuant to the requirements of Regulation G, we have added a reconciliation of actual and projected EBIT to GAAP net income . . . .").[9]

51.     Compliance with Regulation G is mandatory under Section 14(a), and non-compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP financial measures to their respective most comparable GAAP financial measures.

---

[7]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000110465916089133/filename1.htm.

[8]     *Available at* https://www.sec.gov/Archives/edgar/data/1442596/000000000016062042/filename1.pdf.

[9]     *Available at* https://www.sec.gov/Archives/edgar/data/1266719/000114420411046281/filename1.htm.  *See also Actel Corp.*, SEC Staff Comment Letter 2 (Oct. 13, 2010) ("Opinion of Actel's Financial Advisor, page 24 . . . This section includes non-GAAP financial measures.  Please revise to provide the disclosure required by Rule 100 of Regulation G."), *available at* https://www.sec.gov/Archives/edgar/data/907687/000000000010060087/filename1.pdf.  *See also The Spectranetics Corp.*, SEC Staff Comment Letter 1 (July 18, 2017) ("Item 4. The Solicitation or Recommendation Certain Spectranetics Forecasts, page 39 . . . [P]rovide the reconciliation required under Rule 100(a) of Regulation G"), *available at* https://www.sec.gov/Archives/edgar/data/789132/000000000017025180/filename1.pdf.  The SEC Office of Mergers and Acquisitions applied Regulation G in these transactions, which reflect the SEC's official position.  Any claim that the SEC has officially sanctioned the use of non-GAAP financial forecasts for business combinations when the Board itself created and relied on such non-GAAP forecasts to recommend a transaction such as the Proposed Transaction is incorrect.  The SEC's website provides certain unofficial guidance for certain matters, called Compliance and Disclosure Interpretations ("C&DI's") which through the use of Q&As reflect the views of particular SEC staff and on which certain issuers have in the past claimed an exemption from Regulation G.  The SEC itself expressly disclaims C&DI's as they are not regulations that have been reviewed by the SEC, and the SEC expressly states that they are not binding and should not be relied on.  *See* www.sec.gov/divisions/corpfin/cfguidance.shtml (last visited Sept. 3, 2020).

- 14 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

52.    In addition to the Proxy's violation of Regulation G, the lack of reconciliation or, at the very least, the line items utilized in calculating the non-GAAP measures render the financial forecasts disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP financial measures and their respective most comparable GAAP financial measures. Nor can shareholders compare the Company's financial prospects with similarly situated companies.

53.    Such projections are necessary to make the non-GAAP projections included in the Proxy not misleading for the reasons discussed above. Indeed, Defendants acknowledge "non-GAAP financial measures should not be viewed as a substitute for GAAP financial measures and may be different from non-GAAP financial measures used by other companies. Accordingly, these non-GAAP financial measures should be considered together with, and not as an alternative to, financial measures prepared in accordance with GAAP." Proxy 54.

54.    As such, financial projections are plainly material, and shareholders would clearly want a complete and non-misleading understanding of those projections.

55.    In order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 53-54, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

***The Materially Misleading Financial Analyses***

56.    The summary of the valuation methodologies utilized by Goldman Sachs, including the utilization of certain of the non-GAAP financial projections described above by Goldman Sachs, in connection with its valuation analyses (*id.* at 47) is misleading and in violation of Regulation 14a-9. The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies formulate non-GAAP metrics differently.  Once a Proxy discloses internal projections relied upon by the Board, those projections must be complete and accurate.

- 15 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

57.    With respect to Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*, the Proxy states that Goldman Sachs performed a discounted cash flow analysis on Varian using Varian's expected unlevered free cash flow for the fourth fiscal quarter of 2020 and the fiscal years 2021 through 2030 and a range of terminal values, calculated by applying a perpetuity growth rates range of 2.25% to 2.75% to the terminal year estimate of the free cash flow to be generated. *Id*. at 49.   Goldman Sachs discounted the estimated unlevered free cash flows and terminal values to present value as of July 3, 2020 using a discount rate range of 8.00% to 9.00%, reflecting Varian's weighted average cost of capital.  *Id*.  Goldman Sachs then subtracted Varian's net debt from the range of enterprise values to derive a range of equity values for Varian and divided by the number of fully diluted shares outstanding of Varian common stock.  *Id.*

58.    The Proxy fails to disclose: (1) the calculated terminal values; (2) the inputs used to calculate the Company's weighted average cost of capital; (3) Varian's net debt; (4) how stock based compensation was treated (as a cash or non-cash expense); or (5) the number of fully diluted shares of Varian outstanding.

59.    Since information was omitted, shareholders are unable to discern the veracity of Goldman Sachs's *Illustrative Discounted Cash Flow Analysis*.   Without further disclosure, shareholders are unable to compare Goldman Sachs's calculations with the Company's financial projections.  The absence of any single piece of the above information renders Goldman Sachs's *Illustrative Discounted Cash Flow Analysis* incomplete and misleading.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

60.    As a highly-respected professor explained in one of the most thorough law review articles regarding the fundamental flaws with the valuation analyses bankers perform in support of fairness opinions, in a discounted cash flow analysis a banker takes management's projections and then makes several key choices "each of which can significantly affect the final valuation." Steven M. Davidoff, *Fairness Opinions*, 55 Am. U.L. Rev. 1557, 1576 (Aug. 2006).  Such choices

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

include "the appropriate discount rate, and the terminal value . . . ." *Id.* (footnote omitted).  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value . . . . The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions[.]

*Id.* at 1577-78 (footnotes omitted).

61.     Therefore, in order for Varian's shareholders to become fully informed regarding the fairness of the Merger Consideration, the material omitted information must be disclosed to shareholders.

62.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Transaction from Varian's shareholders.

63.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Transaction, Plaintiff and the other members of the Class will not be able to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

64.     Further, failure to remedy the deficient Proxy and consummate the Proposed Transaction will directly and proximately cause damages and actual economic loss to shareholders (i.e., the difference between the value to be received as a result of the Proposed Transaction and

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

the true value of their shares prior to the merger), in an amount to be determined at trial, to Plaintiff and the Class.

## COUNT I
### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and 17 C.F.R. § 244.100 Promulgated Thereunder)

65.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

66.    Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any [P]roxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

67.    The failure to reconcile the non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

68.    As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most comparable" GAAP measure. 17 C.F.R. § 244.100(a).

69.    As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e. the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

as the Court deems appropriate, including rescissory damages.

<b><u>COUNT II</u></b>

<b>(Against All Defendants for Violations of Section 14(a) of the Exchange Act and<br>Rule 14a-9 Promulgated Thereunder)</b>

70.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

71.    SEC Rule 14a-9 prohibits the solicitation of shareholder votes in registration statements that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading[.]" 17 C.F.R. § 240.14a-9(a).

72.    Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

73.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

74.    The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

- 19 -

<b>CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF<br>THE SECURITIES EXCHANGE ACT OF 1934</b>

75.     The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

76.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

77.     Varian is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

78.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

79.     As a direct and proximate result of the dissemination of the false and/or misleading Proxy Defendants used to recommend that shareholders approve the Proposed Transaction, Plaintiff and the Class will suffer damages and actual economic losses (i.e., the difference between the value they will receive as a result of the Proposed Transaction and the true value of their shares prior to the merger) in an amount to be determined at trial and are entitled to such equitable relief as the Court deems appropriate, including rescissory damages.

## COUNT III
### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

80.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

- 20 -

1   herein.

2        81.    The Individual Defendants acted as controlling persons of Varian within the

3   meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

4   directors and/or officers of Varian, and participation in and/or awareness of the Company's

5   operations and/or intimate knowledge of the incomplete and misleading statements contained in

6   the Proxy filed with the SEC, they had the power to influence and control and did influence and

7   control, directly or indirectly, the decision making of the Company, including the content and

8   dissemination of the various statements that Plaintiff contends are materially incomplete and

9   misleading.

10        82.    Each of the Individual Defendants was provided with or had unlimited access to

11   copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or

12   shortly after these statements were issued and had the ability to prevent the issuance of the

13   statements or cause the statements to be corrected.

14        83.    In particular, each of the Individual Defendants had direct and supervisory

15   involvement in the day-to-day operations of the Company and, therefore, is presumed to have had

16   the power to control or influence the particular transactions giving rise to the Exchange Act

17   violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous

18   recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They

19   were thus directly involved in preparing the Proxy.

20        84.    In addition, as the Proxy sets forth at length, and as described herein, the Individual

21   Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The

22   Proxy purports to describe the various issues and information that the Individual Defendants

23   reviewed and considered.  The Individual Defendants participated in drafting and/or gave their

24   input on the content of those descriptions.

25        85.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a)

26   of the Exchange Act.

27

- 21 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF**
**THE SECURITIES EXCHANGE ACT OF 1934**

28

Case No. 3:20-cv-06266

86.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Transaction or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing and to award damages arising from proceeding with the Proposed Transaction;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 3, 2020

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By: _/s/ Benjamin Heikali_
Benjamin Heikali, Bar No. 307466
10866 Wilshire Blvd., Suite 1470
Los Angeles, CA 90024
Tel.: (424) 256-2884

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**

- 22 -

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Telephone: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

Fax: (424) 256-2885
Email: bheikali@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Case No. 3:20-cv-06266

## CERTIFICATION OF PROPOSED LEAD PLAINTIFF

I, David Zimmer ("Plaintiff"), declare, as to the claims asserted under the federal securities laws, that:

1.    Plaintiff has reviewed a draft complaint against Varian Medical Systems, Inc. ("Varian") and its board of directors and has authorized the filing of a complaint substantially similar to the one I reviewed.

2.    Plaintiff selects Faruqi & Faruqi, LLP and any firm with which it affiliates for the purpose of prosecuting this action as my counsel for purposes of prosecuting my claim against defendants.

3.    Plaintiff did not purchase the security that is the subject of the complaint at the direction of Plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

4.    Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

5.    Plaintiff's transactions in Varian securities that are the subject of the complaint during the class period specified in the complaint are set forth in the chart attached hereto.

6.    In the past three years, Plaintiff has not sought to serve nor has served as a representative party on behalf of a class in an action filed under the federal securities laws, except as specified below:

7.    Plaintiff will not accept any payment for serving as a representative party on behalf of a class beyond plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the Class as ordered or approved by the Court.

I declare under penalty of perjury under the laws of the United States that the foregoing information is correct to the best of my knowledge.

Signed this 2nd day of September, 2020.

David Zimmer

| Transaction (Purchase or Sale) | Trade Date | Quantity |
|---|---|---|
| Purchase | 04/18/19 | 100 |
|  |  |  |
|  |  |  |